THOMAS A. SCHROEDER, Corporation Counsel Rock County
The Rock County Health Care Center (Center) currently bills the medical assistance program for out-of-county clients at the rate allowed by the state. At the same time the Center contracts with out-of-county 51.42 boards for payment for costs above the medical assistance rate for Day Services-Medical, which is a separately certified program for out-of-county chronically mentally ill patients. You ask whether the receipt of money pursuant to these contracts constitutes supplementation in violation of section 49.49, Stats.
Rock County operates the Center which is a nursing home facility certified under chapter 32 of the Wisconsin Administrative Code. This facility serves both medical assistance (Federal Title XIX) beneficiaries and private pay patients. Depending upon their individual needs, residents are certified for various levels of care. Those residents who are medical assistance recipients have their maximum reimbursement rate established, according to the appropriate level of care, by the state pursuant to section 49.45(6m).
In order to participate in the medical assistance program, a provider of health care services must enter into an agreement with the state agency administering the medical assistance program to accept the reimbursement schedule established by the agency for services to medical assistance clients. For the purposes of this opinion request, the term "supplementation" will be used to refer to the practice by which providers augment this reimbursement rate by billing other sources. *Page 69 
The Center also operates two separately certified units. In addition to providing nursing home services, these units also have a specialized program designated as Day Services-Medical, which requires an additional level of certification from the Department of Health and Social Services of the State of Wisconsin. These specialized units are basically behavioral modification programs and are geared for chronically mentally ill persons with periodic behavioral outbursts who have been treatment failures in the normal nursing home setting.
For some time, clients have been sent by outside counties to reside at the Center to participate in the Day Services-Medical program. All of these clients are eligible for medical assistance. The Center bills the medical assistance program directly for these clients from other counties at the rate allowed by the state. The Center also has entered into contracts with the community mental health boards established under section51.42 from these other counties. Pursuant to these contracts, the Center agrees to provide Day Services-Medical, and the board agrees to pay an amount of money which is designed to cover the Center's cost in excess of the medical assistance reimbursement rate. These contracts have been a prerequisite to admitting out-of-county patients into this program.
You indicate that the Division of Community Services within the Department of Health and Social Services has concluded that the Rock County Health Care Center's contracting arrangements with these 51.42 boards for reimbursement in addition to the medical assistance rate constitutes supplementation which is improper. This conclusion obviously could create a problem with existing contractual arrangements and future plans for the Center and its clients.
At the same time, it appears that the Division of Community Services has suggested an alternative arrangement. It was suggested that a contract between individual county boards could be negotiated to arrange for payment of services where the cost exceeds the medical assistance reimbursement pursuant to section 66.30. Section 66.30 allows for intergovernmental cooperation and provides in pertinent part:
 (2) In addition to the provisions of any other statutes specifically authorizing cooperation between municipalities, unless such statutes specifically exclude action under this section, any municipality *Page 70 
may contract with other municipalities, for the receipt or furnishing of services or the joint exercise of any power or duty required or authorized by law . . . . This section shall be interpreted liberally in favor of cooperative action between municipalities.
In your opinion request, you properly conclude that section 66.30 would authorize counties to enter into the contracting arrangement suggested. However, you also note that the existence of this power to contract does not address the issue of the propriety or legality of the apparent supplementation.
The federal medical assistance regulations provide at42 C.F.R. § 447.15 that the "State Plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency [sec. 1902(a)(4) of the Act] plus any deductible, coinsurance or copayment required by the plan to be paid by the individual." This regulation states only a very narrow exception to the principle that a provider must accept no more than the state-established reimbursement rate.
Section 49.45 deals with the administration of the medical assistance program in Wisconsin and states under subsection (14) that "[n]o provider may impose upon a recipient charges in addition to payments received for services under this section or impose direct charges upon a recipient in lieu of obtaining payment under this section."
This statute is inapplicable to your opinion request because the proposed charges are not imposed upon a recipient. Although a close question is presented, it also is arguable that the above-quoted federal regulation prohibits only supplementation procured from recipients rather than from other sources. However, it is unnecessary to resolve that issue because of the clear and unambiguous language contained in section 49.49(4), which provides:
 Prohibited Charges. No person, in connection with the medical assistance program when the cost of the services provided to the patient is paid for in whole or in part by the state, may:
 (a) Knowingly and wilfully charge, for any service provided to a patient under a medical assistance program, money or other *Page 71 
consideration at a rate in excess of the rates established by the state.
 (b) Knowingly and wilfully charge, solicit, accept or receive, in addition to any amount otherwise required to be paid under a medical assistance program, any gift, money, donation or other consideration, other than a charitable, religious or philanthropic contribution from an organization or from a person unrelated to the patient, as a precondition of admitting a patient to a hospital, skilled nursing facility, or intermediate care facility, or as a requirement for the patient's continued stay in such a facility.
 (c) Violators of this subsection may be fined not more than $25,000 or imprisoned for not more then 5 years or both.
The 51.42 boards would not be making a charitable, religious or philanthropic contribution within the meaning of subsection (4)(b), nor would these boards qualify as "a person unrelated to the patient." Other than that, subsection (4)(b) admits of no exceptions. Any person who charges, solicits, accepts or receives any form of remuneration in addition to the amount otherwise required to be paid violates this subsection and, therefore, is subject to the penalties provided under subsection (4)(c).
Section 49.49 is specifically patterned after 42 U.S.C. § 1396h(d), which reads almost identically. Both provisions were passed in 1977, thereby leading me to believe that the federal statute formed the model legislation upon which the state criminal provision is based. Moreover, certain federal funding for medical assistance fraud control was contingent upon adoption and implementation of these provisions.
There is little reported legislative history behind 42 U.S.C. § 1396h(d). Therefore, it is not absolutely clear whether this section was aimed at preventing contractual arrangements such as those which are the subject of this opinion. In the absence of any clear legislative history, however, it is necessary to follow the clear wording of the statute. As Wisconsin's medical assistance funding is contingent upon strict compliance with the federal medicaid provisions, a different interpretation of section 49.49 (i.e., one that contravenes the plain wording of the comparable federal statute) could possibly jeopardize the state's federal funding. *Page 72 
It is my opinion that the Center contracts with the out-of-county 51.42 boards for payment for costs above the medical assistance rate for Day Services-Medical for out-of-county chronically mentally ill patients result in supplementation as that term is used within this opinion. Even if the contracting parties were the Rock County Board and an outside county board acting pursuant to section 66.30, the arrangement still would constitute supplementation and lead to possible prohibited charges under section 49.49(4).
You also ask whether certain past deficits incurred at this nursing home can be made up through "county appropriations." I decline at this time to answer this additional question in the absence of more facts and your conclusion based upon the reasoning and authorities required from district attorneys and corporation counsel in 62 Op. Att'y Gen. Preface (1973). In all other respects, your request fully met or exceeded the requirements under those 1973 guidelines for which you should be highly commended.
BCL:DPJ